UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| PAUL BARNA, | ) | Case No.: 1:07 CV 147 |
| | ) | |
| Plaintiff | ) | JUDGE SOLOMON OLIVER, JR. |
| | ) | |
| v. | ) | |
| | ) | |
| WACKENHUT SERVICES, LLC, | ) | |
| | ) | |
| Defendant | ) | <u>ORDER</u> |

Pending before the court is Defendant Wackenhut Services, LLC's ("Wackenhut" or "Defendant") Motion to Stay Litigation and Compel Arbitration or Alternatively to Dismiss Plaintiff's contract and promissory estoppel claims. ("Def.'s Mot.," ECF No. 3.) For the following reasons, the Motion to Stay Litigation and Compel Arbitration is granted, and Defendant's Motion in the Alternative to Dismiss Plaintiff's Contract and Promissory Estoppel claims is denied.

### I.  FACTS.

#### A.  Plaintiff's Employment with Defendant.

Wackenhut is a company engaged in the placement of various skilled individuals, including firefighters, in various locations in Iraq. (Compl.¶ 2, ECF No. 1.) Plaintiff Paul Barna ("Plaintiff") applied to Wackenhut in the late summer of 2004 for a firefighter position in Iraq. (Pl.'s Opp'n to Def.'s Mot., Ex. A, Pl.'s First Aff. ¶ 2, ECF No. 4-1.) After submitting paperwork to Defendant, including medical documentation that he is a diabetic, Plaintiff was offered a position by Defendant.

(Pl.'s First Aff. ¶ 4.) On or about September 25, 2004, Plaintiff and Defendant entered into an employment contract guaranteeing Plaintiff certain compensation and benefits, including a salary of $90,000 per year. (Compl. ¶ 18.) Plaintiff's starting date was November 8, 2004. (Pl.'s Opp'n Mot., Ex. A, Employment Offer Letter.)

Plaintiff was flown to Kuwait and then to Baghdad to begin his job as a firefighter. (Pl.'s Supp. Brief in Opp'n to Def.'s Mot. ("Pl.'s Supp. Opp'n Br.") at 3.) After working for a few days in Baghdad, Plaintiff told the Baghdad Fire Chief in casual conversation that he was diabetic. (Pl.'s Opp'n Br., Pl.'s Second Aff. ¶ 1, ECF No. 16-2.) Two days later, Plaintiff was told he was being terminated because of his medical condition. (*Id.*) Plaintiff immediately informed the Fire Chief that the termination was unfair because Defendant knew of Plaintiff's condition before he was hired. (*Id.* ¶ 2.) Plaintiff stated that he was told that the corporate office had been called, and his termination was final. (*Id.* ¶ 2.) Plaintiff was handed a letter dated November 23, 2004, stating that Plaintiff had shown himself to be "professional and motivated" but was being "administratively demobilized effective 24 November 2004." (Pl.'s Supp. Opp'n Br., Ex. 3, Termination Letter, ECF No. 15-3.) The Termination Letter instructed Plaintiff to contact Astrid Gobel in Washington, D.C. for further information. (*Id.*)

Upon arriving home in Cleveland, Plaintiff immediately contacted Astrid Gobel, Wackenhut Human Resources Manager - Iraq, to discuss his termination. (Pl.'s Second Aff. ¶ 5.) Plaintiff informed her that he believed Defendant's actions were extremely unfair in light of its knowledge of his medical condition. (*Id.*) Plaintiff demanded that Defendant reinstate him or find him another job. (*Id.* ¶ 6.) Plaintiff never heard from Goebel. (*Id.*) Plaintiff's attorney sent Defendant a letter on December 14, 2004, demanding Plaintiff's reinstatement. (*Id.* ¶ 7.) Plaintiff never received a

response. (*Id.* ¶ 8.)

## B. Nature of Plaintiff's Claims.

Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") on February 15, 2005, asserting he was discriminated against under the American with Disabilities Act ("ADA") and subsequently obtained a right to sue letter on or about October 25, 2006. (Compl. ¶ 4, citing Ex. A, EEOC Dismissal and Notice of Rights Letter.) Plaintiff's Complaint alleges: (1) Defendant violated the ADA and Ohio Rev. Code § 4112 by failing to accommodate Plaintiff's disability and/or discriminating against him on the basis of his disability and/or perceived disability (Comp. ¶ 5-12); (2) Defendant violated Ohio common law and clear public policy as set forth in various federal and state statutes including, but not limited to, Ohio Rev. Code § 4112, ADA, and various regulations promulgated by the Ohio Civil Rights Commission and the EEOC (*id.* ¶ 13-16); (3) Defendant breached the parties' employment contract (*id.* ¶ 17-22); and (4) Plaintiff's detrimentally relied on Defendant's promise of employment and suffered monetary damages and benefits as a result of leaving a well-paying job with benefits to take a job with Defendant. (*Id.* ¶ 23-25.)

## C. The Employment Agreement.

Defendant's Motion to Compel Arbitration was accompanied by an unsigned form of employment contract ("Employment Agreement"), which memorialized the terms and conditions of Plaintiff's employment. (Def.'s Mot. to Compel, Gail Fuestel Decl., ECF No. 3-4.) Plaintiff initially maintained in his Opposition Motion that he never signed this contract. (Pl.'s Opp'n to Def.'s Mot. To Compel, "Pl.'s Opp'n," ECF No. 3.) However, Defendant subsequently located and filed an Employment Agreement that appears to be signed by Plaintiff. (Notice That Employment

Agreement Signed by Plaintiff Relevant to Defendant's Pending Motion to Dismiss Has Been Located Thereby Rendering Plaintiff's Memorandum in Opposition Moot, ECF No. 10.) After reviewing the documents and speaking to potential witnesses, Plaintiff now concedes that he signed the Employment Agreement. (Pl.'s Supp. Opp'n at 2-3.)

The Employment Agreement § 27, which Plaintiff initialed states, in relevant part, that arbitration is the exclusive means for resolving employment disputes:

> In consideration of your employment, you agree that your assignment, job or compensation can be terminated with or without cause, with or without notice at any time at your option or at Employer's option. You also agree that you will be bound by and accept as a condition of your employment the terms of the Wackenhut Dispute Resolution Program which are herein incorporated by reference. You understand that the Dispute Resolution Program requires, as its last step, that any and all claims that you might have against Employer related to your employment, including your termination, and any and all personal injury claim arising in the workplace, you have against other parent or affiliate of Employer, must be submitted to binding arbitration instead of to the court system....
>
> Should any party refuse to arbitrate or refuse to cooperate in arbitration, the remaining party or parties may proceed with arbitration in the absence of the party so refusing. Notices in respect to arbitration may be transmitted by any reasonable means calculated to convey actual knowledge of the unresolved matter or dispute. With respect to Employer and any affiliated companies, notice by registered mail shall be deemed reasonable and sufficient when mailed to:
>
> Dispute Resolution Program Administrator
> Wackenhut Services, LLC
> 7121 Fairway Drive, Suite 301
> Palm Beach Gardens, FL 33418

Plaintiff argues in his Supplemental Opposition Brief that Defendant waived its ability to arbitrate this case because Plaintiff "did not have the ability to work through" the three steps of the Dispute Resolution Program referenced in § 27. (Pl.'s Supp. Opp'n Br. at 3.) Plaintiff states he was never given a response to his complaint or demands for reinstatement and did not have the

-4-

opportunity to submit evidence through the Dispute Resolution Program (Pl.'s Second Aff. ¶ 8.)

Step One of the current Dispute Resolution Program requires the employee to discuss his complaint with his direct chain of command at the site level. (Ex. 5, ECF No. 15-5.) If the problem persists, Step Two states that the employee must present his complaint to the Office of the Program Manager. (*Id.*) If the parties do not resolve the dispute at Step Two, Step Three states that the aggrieved employee must submit his complaint to Wackenhut's Office of Homeland Security Services in Washington, DC. (*Id.*) Finally, Step Four provides that, if the employee remains unsatisfied, the employee may initiate arbitration. (*Id.*)

Defendant states that the current Dispute Resolution Program went into effect in February 2006, and that it does not apply to Plaintiff. (Gobel Decl. ¶ 3.) Defendant states that firefighters like Plaintiff who were hired before the Program went into effect are allowed to arbitrate without having to go through the specific steps set forth in that Program. (Ex. 1, Gobel Decl. ¶ 3.)

## II. LAW AND ANALYSIS

Defendant requests that this court issue an order compelling Plaintiff to submit this case to arbitration and stay the litigation pending the arbitration. Plaintiff argues that Defendant has waived its right to arbitrate this case.

The Federal Arbitration Act ("FAA") states:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, **shall on application of one of the parties stay the trial of the action until such arbitration has been had** in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3 (emphasis added).

Federal law requires that courts "rigorously enforce agreements to arbitrate." *See Shearson/American Express, Inc. v. McMahon*, 482 U.S. 220, 226 (1987) (declaring a federal policy favoring arbitration) (internal citation omitted). Courts are to examine the language of the contract in light of the strong federal policy in favor of arbitration. *See Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth*, 473 U.S. 614, 626 (1985); *Arnold v. Arnold*, 920 F.2d 1269, 1281 (6th Cir. 1990). The Sixth Circuit applies a four-part test to determine whether to grant motions to stay and compel arbitration:

> **[F]irst**, it must determine whether the parties agreed to arbitrate; **second**, it must determine the scope of that agreement; **third**, if federal statutory claims are asserted, it must consider whether Congress intended those claims to be non-arbitrable; and **fourth**, if the court concludes that some, but not all, of the claims in the action are subject to arbitration, it must determine whether to stay the remainder of the proceedings pending arbitration.

*Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) (emphasis added). Additionally, any ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration. *See Soler Chrysler-Plymouth*, 473 U.S. at 626.

### A. Agreement to Arbitrate

The parties do not dispute that the valid Employment Agreement § 27 provides that arbitration is the exclusive means for the parties to resolve employment disputes. The parties do not dispute that the Employment Agreement applies to them. Accordingly, the court finds that the parties agreed to arbitrate.

### B. Scope of the Arbitration Agreement

Next, the court must determine the scope of the arbitration agreement. *See Stout*, 228 F.3d at 714. The arbitration provision which Plaintiff initialed stated that "any and all claims that you

might have against Employer related to your employment, including your termination ... must be submitted to binding arbitration instead of to the court system." Since the Employment Agreement here provides for the arbitration of *any* dispute, it is broad in scope.

Recently the Sixth Circuit in *Solvay Pharms. v. Duramed Pharms., Inc.*, 442 F.3d 471, 482 (6th Cir. 2006) (internal quotation marks and citation omitted), held:

> [w]hen faced with a broad arbitration clause, such as one covering *any* dispute arising out of an agreement, a court should follow the presumption of arbitration and resolve doubts in favor of arbitration. . . . Indeed, in such a case, only an express provision excluding a specific dispute, or the most forceful evidence of a purpose to exclude the claim from arbitration, will remove the dispute from consideration by the arbitrators.

*See also Simon v. Pfizer, Inc.*, 398 F.3d 765, 773 n.12 (6th Cir. 2005) (stating "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . . If the matter at issue can be construed as within the scope of the arbitration agreement, it should be so construed unless the matter is expressly exempted from arbitration by the contract terms.") (citations omitted)). District courts have the authority to decide, as a threshold matter, whether an issue is within the scope of an arbitration agreement. *See Stout*, 228 F.3d at 714.

Here, the parties do not dispute that the arbitration provision encompasses all of Plaintiff's claims. Rather, Plaintiff, relying on *General Star National Insurance Company v. Administratia Asigurarilor De Stat*, 289 F.3d 434 (6th Cir. 2002) and *Central Trust Co. v. N.A. Anemostate Prods. Div.,* 621 F. Supp. 44 (S.D. Ohio 1985), argues that Defendant has waived its right to insist upon arbitration of these claims. (Pl.'s Supp. Opp'n Br. at 5-7.) As stated previously, Plaintiff bases his argument on the fact that Defendant did not give him a response to his complaint at Step One of the Dispute Resolution Program, and Plaintiff therefore never had "the ability to work his way through the next two steps prior to arbitration." Additionally, Plaintiff states that Defendant made no mention

of its Dispute Resolution Program or the employment contract including the arbitration clause when Plaintiff filed his charges with the EEOC on February 15, 2005.

However, Defendant states that the Dispute Resolution Program did not go into effect until February 2006, and therefore firefighters like Plaintiff who were hired before the Program went into effect were allowed to initiate arbitration without exhausting the aforementioned steps. (Ex. 1, Gobel Decl. ¶ 3.) Defendant also states that, even if the Program applied to Plaintiff, the Program does not preclude Plaintiff from invoking the Program's later steps; indeed, Defendant argues that the Program allows an aggrieved employee to advance any complaint that remains unsettled at a designated step, and no affirmative action from Defendant is required. (Defs.' Reply to Pl.'s Supp. Opp'n Br. at 3.) Moreover, Defendant states that it did not waive its right to arbitrate by not demanding it when Plaintiff filed his EEOC charge because an arbitration agreement may not preclude an employee from filing an EEOC charge.

An agreement to arbitrate may be waived if the actions of a party are completely inconsistent with any reliance on an agreement to arbitrate or if a party delays "its assertion [of the right to arbitrate] to such an extent that the opposing party incurs actual prejudice." *Gen. Star Nat'l Ins. Co.*, 289 F.3d at 438 (citing *Doctor's Assocs., Inc. v. Distajo*, 107 F.3d 126, 131 (2d Cir. 1997)). A waiver of the right to arbitration is "not to be lightly inferred." *Id.* (citing *MicroStrategy, Inc. v. Lauricia*, 268 F.3d 244, 249 (4th Cir. 2001)). In the Sixth Circuit, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Javitch*, 315 F.3d at 624 (citing *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24-25 (1983)). In *General Star National Insurance Company*, the court held that

the party seeking to arbitrate waived its right to demand arbitration because it did not assert its purported right to arbitrate until after the district court had entered a default judgment against it. The opposing party had filed the suit seventeen months earlier and had incurred costs associated with the action. The Sixth Circuit found that under such circumstances, the party seeking arbitration had waived its right to arbitrate. *Id.* Similarly, the court in *Central Trust Co.,* 621 F. Supp. at 46, held that the party had waived its right to arbitrate because it did not invoke arbitration until the litigants had completed discovery, the pretrial conference was concluded, and the case was ready for trial.

Here, Defendant did not waive its right to demand arbitration because its actions in not responding to Plaintiff at Step One of the Dispute Resolution Program were not completely inconsistent with its reliance on the party's agreement to arbitrate. First, even if one were to conclude that the Dispute Resolution Program applies to the instant case, the relevant language of Section One quoted hereafter allows an aggrieved employee to advance a complaint that remains unsettled at Step One to Step Two without requiring any affirmative action from Defendant:

> **Step 1: Site Chain of Command.** Any employee who believes he or she has a specific justifiable request or complaint in regard to wages, hours, conditions of employment or interpretation of the Employment Agreement, shall discuss the same with his or her direct chain of command at the site level. ... Within five days after its presentation to the Senior Site Leader (SSL), *if the SSL's decision is not satisfactory and the issue not settled, the employee shall proceed to the next step of the Dispute Resolution Program*, or the issue shall be deemed waived or abandoned.

(emphasis added). Moreover, as set forth below, the arbitration provision in the Employment Agreement specifically states that, if a party refuses to arbitrate, the other party may proceed with arbitration, and it then provides the Dispute Resolution Program Administrator's contact information:

> Should any party refuse to arbitrate or refuse to cooperate in arbitration, the remaining party or parties may proceed with arbitration in the absence of the party so refusing. Notices in respect to arbitration may be transmitted by any reasonable means calculated to convey actual knowledge of the unresolved mater or dispute. With respect to Employer and any affiliated companies, notice by registered mail shall be deemed reasonable and sufficient when mailed to:
>
> Dispute Resolution Program Administrator
> Wackenhut Services, LLC
> 7121 Fairway Drive, Suite 301
> Palm Beach Gardens, FL 33418

Therefore, Defendant's failure to respond to Plaintiff's complaints at Step One is not inconsistent with its reliance on the arbitration provision. While Defendant might well be estopped by its refusal to answer Plaintiff's inquiries or demands upon termination from arguing that Plaintiff did not follow whatever steps were required at the time of termination, there is no basis to infer estoppel regarding the arbitration provision. Furthermore, Plaintiff does not indicate that he ever contacted the Dispute Resolution Program Administrator pursuant to the procedure outlined in the Employment Agreement. Indeed, as evidenced by his initial response to the Motion to Stay, wherein he denied the Employment Agreement applied to him, he seemed to have lost sight of the fact that he had a written employment agreement, which required arbitration as a final step.

Additionally, Defendant did not waive its right to demand arbitration because it did not delay its assertion of the right to arbitrate to such an extent that Plaintiff incurred actual prejudice. Unlike the parties in *General Star National Insurance Company* and *Central Trust Company*, Defendant here promptly responded to Plaintiff's Complaint by requesting that this court stay the proceedings against it and compel arbitration or, in the alternative, to dismiss Plaintiff's breach of contract and promissory estoppel claims as a matter of law. Since then, the litigation has focused almost entirely on this issue. Moreover, Plaintiff's argument that Defendant waived its right to arbitrate by not

demanding it when Plaintiff filed his EEOC charge is not well-taken. As the Supreme Court stated in *Gilmer v. Interstate/Johnson Lane Corp.,* 500 U.S. 20, 28 (1991), "[a]n individual ADEA claimant subject to an arbitration agreement will still be free to file a charge with the EEOC, even though the claimant is not able to institute a private judicial action." Therefore, it would have been unavailing for Defendant to invoke the arbitration provision when Plaintiff filed his EEOC charge approximately two months after his letter demanding reinstatement. Significantly, Plaintiff did not suffer prejudice in the instant case as a result of Defendant's decision to invoke the arbitration provision after Plaintiff filed the instant lawsuit. Accordingly, Defendant did not waive its right to arbitrate because it did not act inconsistently with the arbitration provision, and Plaintiff did not incur actual prejudice as a result of any delay on Defendant's part.

### C. Arbitrability of Federal Statutory Claims.

The Sixth Circuit's third step in determining whether to grant motions to compel arbitration involves determining "if federal statutory claims are asserted" and if so, then the court "must consider whether Congress intended those claims to be non-arbitrable." *Stout*, 228 F.3d at 714. Plaintiff makes several claims pursuant to the ADA, a federal statutory claim. However, unlike the plaintiff in *Stout,* Plaintiff does not argue that Congress did not intend Plaintiff to arbitrate the ADA claims raised against Defendants. Moreover, the ADA states that "[w]here appropriate and to the extent authorized by law, the use of alternative means of dispute resolution, including settlement negotiations, conciliation, facilitation, mediation, factfinding, minitrials, and arbitration, is encouraged to resolve disputes under this Act." 42 U.S.C. § 12212; *see also Miller v. Public Storage Mgmt.,* 121 F.3d 215, 218 (citing 42 U.S.C. § 12212 and stating that "[t]his language persuasively demonstrates Congress did not intend to exclude the ADA from the scope of the

FAA."). Accordingly, the court concludes that Congress did not intend for Plaintiff's ADA claims to be non-arbitrable.

### D. Stay

The last step of the Sixth Circuit's four-step test is to determine whether to stay the remainder of the proceedings pending arbitration. *See Stout*, 228 F.3d at 714. The Federal Arbitration Act requires that a court, upon being satisfied that the issues involved in the suit are referable to arbitration, "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement. . . ." 9 U.S.C. § 3; *see also ATAC Corp. v. Arthur Treacher's, Inc.*, 280 F.3d 1091, 1094-1095 (6th Cir. 2002). This court has determined that all of Plaintiff's claims against Defendant are arbitrable. Therefore, this court shall stay the above-mentioned claims pending arbitration pursuant to 9 U.S.C. § 3.

### III. CONCLUSION

For the foregoing reasons, the court grants Defendant's Motion to Compel Arbitration and to Stay Litigation Pending the Arbitration Proceeding pursuant to Federal Rule of Civil Procedure 12(b)(1). (ECF No. 3.) The Defendant's motion in the alternative to dismiss Plaintiff's contract and promissory estoppel claims pursuant to Federal Rule of Civil Procedure 12(b)(6) because Defendant could terminate Plaintiff, an at-will employee under Florida law, at any time, is denied because these claims are subject to arbitration.


      /S/ SOLOMON OLIVER, JR.
      UNITED STATES DISTRICT JUDGE

October 25, 2007